IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION




UNITED STATES OF AMERICA,

Plaintiff,

vs.

GERMAN COPPOLA

Defendant.

CR 14-117-BLG-SPW-02

OPINION and ORDER

Defendant German Coppola ("Coppola") moves to dismiss the Indictment for improper venue. Alternatively, Coppola argues that this Court should transfer the case to the Central District of California. For the following reasons, the Court denies Coppola's motion in its entirety.

**I. Background**

The following facts are alleged by the government in the Indictment. For purposes of the instant motion, the alleged facts are presumed true. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

In an effort to boost its economy and force citizens to purchase locally-made goods, the government of Argentina has restricted the access and movement of United States currency. This restriction has created an underground market to meet a large demand for United States currency to purchase foreign goods. Some

businesses have addressed this issue by cashing United States denominated checks drawn on banks around the world. After cashing the checks, the financial institutions would package the checks to be deposited or negotiated. The checks would then be negotiated for deposit to bank accounts in the United States. After the funds were on deposit in an American bank, the original financial institution would direct the movement of funds to purchase foreign goods to be imported into Argentina. The money would also be transferred to banks and businesses around the world for the benefit of unknown individuals and businesses.

La Moneta Cambio SA ("La Moneta") is an Argentinian company licensed to operate as a Foreign Exchange Brokerage Firm. During times relevant in the Indictment, La Moneta acted as an agent to cash and clear checks in United States currency for customers and agents in South America and elsewhere.

Coppola is a citizen of Argentina who presently lives in California. Starting in 2008, Coppola began to engage in discussions with people associated with La Moneta for the purpose of establishing money transmitting businesses ("MSBs") in the United States. Through Coppola and another individual, La Moneta established Velox, Inc. ("Velox"). Velox was registered with the Financial Crimes Enforcement Network ("FinCEN") and had a business address in Billings, Montana. Coppola served as Velox's President, Treasurer, Secretary, Director, and Compliance Officer. Coppola was also associated with at least three other MSBs,

including ones based in California and South Carolina. While Velox was "located" in Billings, Coppola operated his MSBs primarily from his home in California. Coppola did not register the MSBs in California as required by California law. Montana law does not require an MSB to obtain a special license.

Coppola opened several bank accounts in Billings for Velox and represented that Velox invested funds that it received from South American clients. First, in July 2009, Velox opened accounts with Wells Fargo Bank in Billings. As part of Wells Fargo's review of Velox, Coppola submitted an independent report on his compliance with the Bank Secrecy Act and its anti-money laundering provisions. Coppola also sought to open an account for Velox with First Interstate Bank in Billings. The Indictment is unclear whether First Interstate Bank actually opened an account for Velox.

In March 2010, Wells Fargo closed any accounts relating to Velox after it was unable to determine any legitimate personal or business reasons for the movement of funds through the accounts. After Wells Fargo closed its accounts, Velox opened accounts with Stockman Bank in Billings. In November 2010, Stockman Bank also closed Velox's accounts.

As a result of Stockman Bank's closure of its accounts, Coppola and an alleged co-conspirator[1] transferred Velox's proceeds in Montana to a bank account owned by an associated California-based MSB named Trade Wings, Inc. Relevant here, Coppola drafted a check for $971,760 payable to the alleged co-conspirator on November 16, 2010.

On November 20, 2014, the grand jury issued a nine-count indictment naming four defendants, including Coppola. Coppola is charged in Counts I, II, and IX. In Count I, the government alleges that Coppola violated 18 U.S.C. § 1960 by operating an MSB and failing to obtain the appropriate money transmitting license pursuant to a state's law or by failing to comply with federal money transmitting business registration requirements. Specific to Coppola, the government contends that he illegally failed to register Velox and a South Carolina-based MSB named Amerifast pursuant to the requirements of federal or California law.

In Count II, the government alleges that Coppola violated 18 U.S.C. § 1957 by engaging in a monetary transaction involving criminally derived property of value greater than $10,000. The government contends that Coppola's transfer of

[1] This co-conspirator is a defendant in the Indictment, but the Court will not use his name as he has yet to appear on the charges and the Indictment remains sealed.

$971,760 in November 2010 was a transaction of money obtained as a result of the criminal activity alleged in Count I.

In Count IX, the government alleges that Coppola violated 31 U.S.C. §§ 5316 and 5324(c) by failing to file Currency or Monetary Instrument Transaction Reports for transactions involving transferring more than $10,000 into or out of the United States. The government further contends that Coppola failed to file the reports as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

The government seeks the forfeiture of money seized in bank accounts belonging to Coppola and his alleged co-conspirators. The government also seeks the forfeiture of real estate located in Huntington Beach, California.

Coppola is the only defendant that has appeared on the Indictment and has retained counsel located in Miami, Florida. Coppola now moves to dismiss the Indictment for improper venue. Coppola argues that California is the proper venue for this action. Alternatively, Coppola asks the Court to exercise its discretion and transfer the case to the Central District of California.

**II. Motion to Dismiss for Improper Venue**

United States Constitution Art. III §2, cl.3 provides that, "[t]he Trial of all Crimes…shall be held in the State where the said Crimes shall have been committed." As both parties agree, "[q]uestions of venue in criminal cases are not

merely matters of formal legal procedure. They raise deep issues of public policy." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994) (*quoting United States v. Barnard*, 490 F.2d 907, 910 (9th Cir. 1973).

In evaluating the venue of any given prosecution, the court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). The court must be aware that "venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it." *Travis v. United States*, 364 U.S. 631, 634 (1961) (*quoting United States v. Johnson,* 323 U.S. 273, 275, (1944)). Conversely, "[t]he constitutional requirement is as to the locality of the offense, and not the personal presence of the offender." *Travis v. United States*, 364 U.S. 631,631 (1961); *Armour Packing Co. v. United States*, 209 U.S. 56, 76 (1908).

Venue is typically "a question of fact that the government must prove by a preponderance of the evidence." *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012); *see also United States v. Casch*, 448 F.3d 1115, 1117 (9th Cir. 2006) ("In a jury trial, it is not for the court to determine that venue exists, and it is error for the court to decline to give the instruction"). Given that Coppola challenges venue pretrial, the Court must accept all facts alleged by the

government as true. *Jensen*, 93 F.3d at 669. Finally, "[w]hen a defendant has been indicted on multiple counts, venue must be proper for each count." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002).

The Federal Rules of Criminal Procedure do "not require venue to be pleaded." *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir. 1963). An indictment only needs to contain a bare-bones allegation that criminal activity took place in the venue. *See United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997). The Court may not weigh any evidence presented by a defendant to challenge an assertion that the criminal activity took place in the venue pled in an indictment. *Jensen*, 93 F.3d at 669-70.

The Indictment states that each offense took place in "the District of Montana and elsewhere." By virtue of this allegation, Montana is an appropriate venue from the face of the Indictment. Coppola remains free to challenge venue before the jury. However, the Indictment is sufficient to withstand Coppola pre-trial venue challenge.

Although the Court finds that the Indictment properly alleges venue on its face, the Court will also discuss how the facts pled in the Indictment support a finding that venue in Montana is appropriate on each count.

## A. Count I

Under 18 U.S.C. § 1960(a), it is illegal to operate an unlicensed MSB. An unlicensed MSB is defined as a money transmitting business which affects interstate or foreign commerce that:

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable; [or]
>
> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section[.]

18 U.S.C. § 1960(b)(1). Accordingly, a money transmitting business can violate § 1960 by either failing to register pursuant to federal regulations or by failing to register pursuant to the state's law in which the money transmitting business was operating.

The Court finds that the facts alleged by the government are sufficient to establish venue in Montana. The government contends that Coppola established Velox in Montana and opened bank accounts for Velox in Montana. The government further alleges that Coppola operated Velox from his home in California. According to the Indictment, Coppola transmitted millions of dollars to and through California, Montana, and South Carolina using his MSBs, including Velox. Since Velox was not licensed to operate in California, § 1960(b)(1)(A)

may be satisfied by Coppola's operation of Velox from California and the alleged transmittal of funds among the separate MSBs through California. While Velox was not required to register under Montana law, Coppola may have violated California law by operating it in California without appropriate licensing.

Alternatively, § 1960(b)(2) may be satisfied if Coppola failed to register his MSBs in accordance with 31 U.S.C. § 5330 or any relevant regulations. Coppola correctly points out that the government concedes that Velox was registered with FinCEN. However, the government charged Velox with failing to comply with all the requirements of § 3550 and the accompanying regulations. Given that Velox was established in Montana and the Court is required to accept the government's allegations as true, the Court also finds that the Indictment sufficiently establishes venue in Montana under § 1960(b)(2).

**B. Count II**

A person violates 18 U.S.C. § 1957(a) by engaging "in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." Venue for prosecution under § 1957 may be brought in:

> (A) any district in which the financial or monetary transaction is conducted; or
>
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that

district to the district where the financial or monetary transaction is conducted.

18 U.S.C. § 1956(i)(1).

The Court finds that the facts alleged in the Indictment are sufficient to establish venue in Montana for Count II. The government alleges that Coppola transferred $971,760 that was illegally derived from the conduct specified in Count I. As discussed above, the Court finds that venue in Montana is proper for Count I. Under § 1956(i)(1)(B), Montana is also a proper venue for Count II if Montana is where the transfer of the proceeds was conducted. The government alleges that Coppola moved the funds from Velox's accounts in Montana to a different MSB in California. The Court determines that the government provides sufficient facts in the Indictment to support a finding by the jury that part of the alleged illegal transfer originated in Montana. Accordingly, venue may be proper in Montana.

**C. Count IX**

A person is required to report the transportation of more than $10,000 at one time either into or out of the United States. 31 U.S.C. § 5316. It is a crime to either fail to report such a transaction or to structure any importation or exportation of currency to avoid the reporting requirements. 31 U.S.C. § 5324(c). The government alleges in Count IX that Coppola violated 31 U.S.C. §§ 5216 and 5324(c) by failing to report transactions from his MSBs, including Velox. The government further seeks enhanced punishment under 31 U.S.C. § 5324(d)(2) for

engaging in the illegal activity involving more than $100,000 in a 12-month period.

The Court finds that Montana is a proper venue under the facts alleged in the Indictment for Count IX. Velox had a Montana address and had bank accounts in Montana. The government alleges that Coppola failed to report money going into or out of the United States via Velox. Since Velox's bank accounts were located in Montana, the government may prosecute its case here.

For the foregoing reasons, the Court denies Coppola's motion to dismiss. The Court notes that this ruling does not preclude Coppola from asserting a venue defense at trial. A jury may conclude that Montana is an improper venue after weighing the facts presented by both parties. However, the Court is required to assume the government's allegations as true at this point in the proceedings. Given that the Indictment contains sufficient information to support a finding that venue exists, the Court is obligated to deny the motion.

**III. Motion to Transfer Venue**

In the alternative, Coppola moves this court for a transfer of venue to the Central District of California "in the interest of justice and convenience," pursuant to Federal Rule of Criminal Procedure 21(b). To bolster his claim, Defendant lists the ten relevant factors for courts to consider when determining whether a case

should be transferred upon a defendant's motion, as stated in *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243 (1964). These include:

> "(1) location of [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special element which might affect the transfer."

*Platt*, 376 U.S. at 243–44.

"The Constitution makes it clear that determination of proper venue in a criminal case requires determination of where the crime was committed. The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *Id.* at 245. None of the *Platt* factors are given preeminent weight, nor should the quantity of factors favoring one party outweigh quality of factors in opposition. *United States v. Riley*, 296 F.R.D. 272, 275 (S.D.N.Y. 2014). The defendant bears the burden of showing that a transfer is appropriate, and as a general rule a criminal prosecution should be retained in the district it was filed. *Id.*

Given the ease of reviewing discovery from afar using technology and the ease of travel, the Court finds that the first *Platt* factor is neutral, if not slightly leaning towards transfer. As to the second *Platt* factor, "[g]enerally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not

suffice for transfer.... Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial.... the court must rely on 'concrete demonstrations' of the proposed testimony." *United States v. Spy Factory*, 951 F.Supp. 450, 456 (S.D.N.Y. 1997). Here, Coppola offers little more than a claim that five of the potential thirty-three witnesses reside in California without showing through testimony the details of their potential inconvenience. Further, they are government witnesses, so Coppola will not be prejudiced by their travel to Montana for trial. The Court finds the second *Platt* factor to weigh towards retaining venue in the District of Montana.

As for the third factor, while the Indictment and Bill or Particulars primarily discuss violations of California law, there exist a host of issues involving Coppola's and Velox's operation in Montana. The Court finds that the events at issue neither support transfer nor retaining the action.

For similar reasons as stated in the analysis of the first *Platt* factor, the Court finds that advances in technology, allowing ease of access to documents and files likely to be used in this proceeding, neither benefits nor burdens either side of the action, rendering the fourth *Platt* factor neutral.

As both sides agree, the current status of the Defendant as a party "on a limited parole visa which does not allow him to work," negates any meaningful evaluation of the fifth *Platt* factor.

In evaluating the sixth, seventh, and eighth *Platt* factors - the expense to the parties, the location of defendant's counsel, and the relative accessibility of place of trial - the Court notes that no matter the decision, expenses will be incurred by one side or the other. If transferred, both Coppola and the government would have to send their trial teams to the Central District of California for trial. If the Court retains the case, Coppola and his counsel will have to travel to the District of Montana. Neither party demonstrates that it could not afford the costs of travel, so this factor is not dispositive. The Court is similarly unpersuaded that Coppola's counsel being located in Miami should weigh heavily in the analysis; he would need to travel in either scenario. The Court finds that the lack of direct flights from Miami to Billings is unpersuasive, as enduring a connecting flight hardly seems to rise to the level of burden envisioned in *Platt*. For much the same reason, the Court also finds the relative accessibility of the District of Montana versus the Central District of California unhelpful. Both locations are accessible through air travel. While flying from Miami to Los Angeles is cheaper and faster than flying from Miami to Billings, the Court is unpersuaded that this factor weighs strongly in favor of transfer.

As to the ninth *Platt* factor, Coppola points out that the District of Montana has a higher criminal caseload per judgeship than the Central District of California. However, the Central District of California has a substantially higher civil caseload

than the District of Montana. *See* http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-march-2016. The Federal Judiciary uses a metric known as "weighted filings" to determine a court's caseload. Weighted filings consider the complexity and time-consuming nature of the civil and criminal cases assigned per district. As of March 2016, the Central District of California had 551 weighted filings per judgeship, while the District of Montana had 414 weighted filings per judgeship. *Id.* Thus, the Court finds that the ninth *Platt* factor favors retaining venue in the District of Montana.

Finally, Coppola argues that the ethnic makeup of the population in the Central District of California compared to that of the District of Montana would provide a more competent jury, as more jurors will have a similar ethnic background as Coppola and more jurors would be able to read the documents that are written in colloquial Spanish. However, the government will present an FBI linguist to translate the relevant documents into English. Coppola will be able to cross examine the linguist or otherwise present his proposed interpretation of the documents to the jury. In addition, Coppola does not present compelling evidence that a Montana jury would be unable to fairly weigh the evidence. The Court has held jury trials with defendants of various racees and ethnicities, and the Court is unpersuaded that Coppola would receive a more fair trial in California than he

would in Montana. For this reason, the Court considers the tenth *Platt* factor to be neutral.

After weighing the *Platt* factors, the Court declines to transfer venue to the Central District of California. As stated before, the purpose of the *Platt* factors is to weigh them "against one another and against the backdrop of doing what is in the overarching interest of justice." *Spy Factory*, 951 F. Supp. at 455. The Court finds that Coppola will suffer no grave hardship or unfairness should this action remain in the District of Montana, and given the nature of the alleged crime, it would not be unreasonable to retain venue in the District of Montana.

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that Coppola's Motion to Dismiss for Improper Venue or Alternatively to Transfer Venue (Doc. 74) is DENIED in its entirety.

DATED this 18th day of July, 2016.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge